Judges Wardlaw, Clifton, and Katzman, Mr. Eldridge, good morning. I am Tim Brosnan. I'm appearing on behalf of Petitioner Kelly Kessler. With me this morning is my co-counsel, Julie Schumer. May it please the Court, I respectfully request to reserve six of my ten minutes for rebuttal. All right, what's your clock? So I'll try to be quick about it right now. Petitioner Kellyanne Kessler is wrongfully serving a draconian sentence of 26 years to life on which she's already completed 15 years based on an erroneous admission elicited by her counsel erroneously elicited an admission to a strike prior that was not a valid strike prior without doing any investigation of the underlying file, contrary to Strickland. The victim here, Dory Jean Height, personally appeared at Ms. Kessler's sentencing and told the Court she did not believe a 25-year sentence was appropriate. That's in the District Court EC-CMF record at Dock 88-4 at 58. It's not in the ER. The trial court nonetheless imposed a sentence of 26 years to life. At the time of trial, and the parties know this, again, it's not in the record and I don't want to discuss matters that are not directly in the record, but at the time of trial, it was clear that both sides understood this case was not a 26-to-life case, but it worked out that way because of Mr. Hove's ineffective assistance. Well, it worked out that way because of California's three-strikes law. That's the law, Your Honor. That is the statutory law. But for Mr. Hove's ineffective assistance, Ms. Kessler would not be serving the sentence she's now serving. What exactly did he do? So she doesn't have a declaration explaining exactly what her conviction was for in Nevada? There was a declaration. There was a sentencing memorandum that was entered in Nevada, and it specified some elements of the offense, and the elements as specified in that, Your Honor, do not qualify as a California burglary or a California strikeable offense. That's in the further excerpts of record that we submitted with the reply brief. And off the top of my head, I don't want to waste much time wandering around here, but off the top of my head, I believe it's at page F.E.R.123, but I found it as my hair has gotten white, my memory for record sites has almost disappeared. Yes, it's at F.E.R.122, and the memorandum itself is at 121 through 124. Mr. Hove enlisted the admission on February 26, 2003. Two days later, it became apparent to the prosecutor that the prosecutor believed that he needed more in order to get the strike conviction that he wanted. So he sought an admission, a further admission from Mr. Hove as to the nature of the prior. He does that in a passage in the E.R. at 120, and he asked Mr. Hove to stipulate that the Nevada burglary qualified as a California first-degree burglary. And, Mr. Hove, you can — it's one of these moments in reading a transcript, for me at least, when it was very easy to imagine the party's expressions and the light bulb going on in Mr. Hove's head. Didn't counsel have access to known evidence regarding the Nevada case supporting a finding of habitation? He had nothing to — The criminal complaint identified the burglary as a dwelling located at 949 West — — that a foreign conviction qualifies as a California strikeable offense. And Respondent has not addressed — But he was sure that the prosecution couldn't come up with something that would establish it and didn't have reason not to want to get into the details of her prior conviction. Well, we have — I mean, the argument that's been made is that this is a tactical decision because he doesn't want the California court that he's in front of here to start digging into her prior criminal conduct for fear that it's going to tilt the balance as to whether she's going to be convicted in the California proceeding at all. Are you asking — I'm sure you're questioning. Are you asking me about the — Mr. Hove's thinking or Mr. Knoll's, the prosecutor's thinking? Mr. Hove's thinking. I don't think he's eager to have the jury hear about his client's past criminal record. Under Strickland and Rompea and Terry Williams, Your Honor, United States Supreme Court cases, trial counsel has a duty to conduct an adequate investigation to make an informed decision as to the strategy to be employed at trial and in conducting the proceedings. Mr. Hove did not conduct that investigation as the Nevada prior. Absent that investigation, he could not make an intelligent, reasonable, tactical decision within Strickland. In the record, Mr. Hove says, all right, and we have decided tactically that we do not want the jury to hear, have these priors read, have them try whether you were in fact convicted or not of those priors. Isn't that correct? And the defendant says, we've discussed that. Your Honor, what — I'm not sure what page Your Honor is referring to, but — U.R. 114. 113? 114. Mr. Hove was not engaging in a reasonable — essentially what I was — I don't want to repeat the answer again, but — and perhaps I'm misperceiving the Court's question. Mr. Hove had not conducted an adequate investigation to make an informed, reasonable, tactical decision. Well, he may have a sense from his client as to what the crime was, and his concern was he can't be certain what the prosecution will come up with in order to prove up that condition. It was Mr. Hove's obligation, Your Honor, to investigate that file. As we know, habeas counsel subsequently obtained that file. Mr. Hove did not apparently bother to obtain that file. And equally importantly, under ROMPIA, what the defendant tells or does not tell trial counsel does not limit trial counsel's duty of investigation. Trial counsel's duty of investigation is independent of what the client tells counsel. And particularly as to a prior offense, which is a matter that — I can see that I'm going over my time — which involves legal standards. It's not something that the client is going to be informed as — be able to give counsel an informed response. And with that, unless the Court has further questions for me right now, I'll reserve my remainder for rebuttal. All right. Thank you, counsel. Thank you. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. We do not concede anything that's not in the excerpts of record regarding what everyone knew at trial about this case. And my colleague has said that habeas counsel has turned over at some point the file from Nevada. That's not true. At all times, they've only had some excerpts of that file. We know, for example, they don't have transcripts from that file that were ever turned over to the State Court. So there has never been a showing of just all that was in that file in 2003. We do know that enough was in that file in 2003 to show that there was — it was habitation. It was an inhabited dwelling that was the subject of burglary. We have the Petitioner's own statement, which was incorporated in a judicial complaint. If you're going to charge something as a prior strike, don't you have to prove that it's a prior strike under California law? You do have to do that if they don't waive the requirement that you have to prove it, which she did. But we also — we actually do know, we don't have to know, that there was adequate evidence because, again, it's their burden of proof. But, in fact, we do know there was adequate evidence. It's not their burden of proof. It's the government's burden of proof when you're charging the three strikes. It is the government's burden of proof unless and until that burden is waived by the defendant. How does the defendant waive your burden? By pleading, Your Honor. So she — you're saying she pled guilty to the strike? Yes, that is correct, Your Honor. That is, in fact, the entire basis of the complaint. What do we know about — this is something that bothers me. Like, do we actually know whether this was a legitimate strike or not from the record? We do. We actually do, even though it is their burden. Okay. Tell me how we know that. We have the defendant's statement to a police officer. She was arrested near the house, and she admitted that she and her cohort burglarized the residence, and we know that it was inhabited. That statement by her is recounted by a police officer, and that has created a judicial document because the magistrate — the magistrate in Nevada signed it. And therefore, what was a police report became a charging document. That is in the record. We still have that in the record, despite what we don't have. And California — Did she plead guilty to that and become convicted, or what? She — that conviction in Nevada was burglary. Burglary does not require in Nevada that it be of a residence. But in fact, it was. And in California, you have to show that something that was a burglary in fact involved a residence for it to be a strike. That's what she admitted in California, that what everyone agrees was a burglary in fact involved a residence. The entire complaint by Petitioner is that counsel did not investigate whether or not, in fact, that there was enough evidence in 2003 to show it was inhabited. There's never been a complaint that somehow she didn't commit a burglary. It is merely the habitation element. What we don't ever have, though, is actual evidence that counsel didn't investigate. There is — we don't have evidence as to what counsel had, except we do know on the record that the DA said in front of counsel, who didn't dispute it, he saw the — he saw the documentation that I have before and prior to the actual admissions. So there's endless statements that somehow counsel didn't investigate, and there's not a shred of proof. The presumption is counsel did either investigate or made a reasonable tactical decision not to investigate. By all indications, he had the record. And if I'm going to mention, for example, one of my best cases, Burt V. Tetlow points out if counsel may well have gotten it from the prosecutor, you don't have a — the Petitioner doesn't meet his burden of proof of showing that it hasn't been investigated. Roberts. What — I think you touched on this in your remarks, but of what moment is the fact that the prior Nevada burglary conviction was not in the first degree as required under the California Three Strikes Law because the relevant Nevada criminal statute lacks degrees? It is of no moment because the question whether it is a strike isn't simply whether it's of first degree. In fact, I don't know that — I don't know if Nevada has a first degree conviction. As the prosecutor was pointing out, what matters is what everyone agrees is a burglary. Did it, in fact, involve an — a residence? It wouldn't have made a difference in Nevada whether or not it did, as I understand, but it makes a difference in California. So Nevada wouldn't have adjudicated as a matter of elements the fact whether it was a residence. California adjudicates that. You have a right to jury trial in California on precisely that fact. But instead, Petitioner gave that up and admitted the only disputable fact, which was did that burglary involve a residence? If Kessler's trial counsel admitted a prior burglary conviction as a strike under the California Street Strikes Law, where the equivalent crime in California would not have counted as a strike because it was not in the first degree, would that be grounds for ineffective assistance of counsel under Strickland? Well, there's a problem because there is no — there's no equivalent issue, Your Honor. The question is California treats its strikes, and it's come up a number of times in California cases. You've got — California doesn't just narrow itself to what the charged elements are in a prior state. Rather, if, as a fact, if there was something else that makes a strike in California, it can be a California strike. That was discussed, indeed, on appeal as well. So there isn't an equivalent issue, and, indeed, that's why the prosecutor in particular, when trial counsel, after the jury started — has gone to liberations, starts now wanting to hedge now that he's gotten the benefit of a trial in which the priors weren't gotten into. I don't have any further — I'm happy to answer any further questions. All right. Thank you, counsel. Thank you, Your Honors. Your Honors, may it please the Court. The question was asked, what was in the Nevada file in 2003? That is direct — it's unknowable. The fact that it's unknowable, as Mr. Eldridge characterized it, is directly traceable to the ineffective assistance of counsel here and his failure to investigate at the time of trial and his refusal to cooperate with habeas counsel and his refusal to turn over his file to habeas counsel until January of 2005, as contained in the Declaration of Habeas Counsel, which is in the excerpt of record. Mr. Hove also refused to respond to three requests from the State Court of Appeal to comment on the claim, much as he refused to cooperate with the State Bar in his State Bar proceeding, which resulted in his disbarment in 2008. There was no evidentiary hearing granted in State Court, even though Petitioner had made a prima facie showing repeatedly requested an evidentiary hearing, so she was denied the ability to develop the record, which is contrary to Judge Kaczynski's opinion in Taylor v. Maddox, which was discussed in the opening brief. Can I ask you about the standard of review here? Yes, Your Honor. And that — this is an ADPA, A-E-D-P-A case. Yes, Your Honor. And when — pursuant to Roland Harrington, when ADPA applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Your Honor, we argue — Yes. We argue in the — I see my time is coming down here. We argue in the reply brief seven different reasons why ADPA is not — is met, satisfied, or not applicable here. And we also make similar arguments in the opening brief, respectfully. I've read those, yes. Thank you, Your Honor. I'm sure you have. And while I see I have 30 seconds left — That may not be a very persuasive argument. We've read it, and we're asking a question. So what do you think is the best reason for why ADPA shouldn't apply? I think they're all good reasons, Your Honor, quite frankly. I could — the — put candidly and bluntly, the State court appellate and habeas proceedings were a travesty. And, you know, strong language doesn't really replace logic. No, Your Honor. And I'm still waiting for an answer to the question Judge Katzman asked, which is why should we disregard the EPTA standard? I'm sorry, Your Honor? Why should we disregard the EPTA standard? The — Because if we don't, I mean, I have difficulty seeing how your argument goes. The last reason — the last reasoned opinion here makes factual finds that are unreasonable. It ignores showings that were made in the petition before that court. It ignores evidence that was shown to that court. It states the law erroneously. It ignores the controlling Federal law, including Strickland. And lastly, if I may, we know what Mr. Knowles had at the time of trial because he filed a declaration with the people's return in the trial court, which is contained in the further excerpts of record at 173 through 174, and paragraph 4 of that at pages 173 through 174 states what he had. What he had was the police report and a witness list. And under the California courts — California decisions of Plager, Hernandez, and Rodriguez, that's plainly inadequate to establish an out-of-state prior qualifies as a strike in California. And with that, I would very respectfully ask the Court, unless it has any other questions for me, to reverse the three-strike conviction here and remand the matter for sentencing without consideration of that strike so that Ms. Kessler is — receives a sentence, a maximum sentence of seven years or less. Thank you very much, Counsel. Thank you, Your Honor. Kessler v. Johnson will be submitted, and we'll take up U.S. v. Martin.
judges: Wardlaw, Clifton, Katzmann